IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASM AMERICA, INC.,

                  Plaintiff,                  CV-05-1326-ST

     v.                          OPINION AND ORDER

ACECO SEMICONDUCTOR, INC.; EDGE
TECH, INC., dba ACECO PRECISION
MANUFACTURING; and ACECO MACHINE
WORKS, INC.,

                  Defendants.

THE ACE COMPANY, INC., dba ACECO
PRECISION MANUFACTURING and ACECO
PRECISION SEMICONDUCTOR
COMPONENTS,

                  Counterclaimants,

     v.

ASM AMERICA, INC.,

                  Counterclaim Defendant.

1 - OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

On August 25, 2005, plaintiff, ASM America, Inc. ("ASM"), filed a Complaint against

defendants for infringement of United States Patent No. 4,798,165 ("the '165 Patent") for an

invention entitled "Apparatus For Chemical Vapor Deposition Using An Axially Symmetric Gas

Flow" ("showerheads"). Defendants/counterclaimants (collectively "AceCo") filed a

counterclaim for a declaratory judgment declaring the '165 Patent invalid, unenforceable, and/or

not infringed by defendants.

On January 17, 2006, this court granted ASM's Motion For Voluntary Dismissal with

prejudice without any award of attorney fees or costs to AceCo, and entered Judgment

accordingly (docket # 36). As a result of the dismissal, AceCo now has filed a Motion for Fees

and Costs as the prevailing party under FRCP 54 in circumstances permitted by 35 USC § 285

(docket # 37) and also filed a Bill of Costs (docket # 44). For the reasons set forth below,

AceCo's motion is denied.

## DISCUSSION

ASM sought a voluntary dismissal with prejudice after ostensibly learning that the cost

of proceeding with this litigation through trial may well be more substantial than the damages

sustained. AceCo opposed dismissal based on a reasonable apprehension of future litigation,

given its continuing efforts to qualify its showerheads and intent to ultimately start selling them

in volume. Without an effective covenant not to sue, AceCo believed that ASM may later

initiate litigation for past, present, and future alleged infringing activities. This court rejected

that argument since the only claims involved infringement of the '165 Patent which expired

January 17, 2006. Thus, the only possible future claims by ASM would be for infringement of a different patent or some other claim not alleged in this lawsuit. In the event of dismissal, AceCo also requested an award of attorney fees either under FRCP 41(a)(2) as a condition of dismissal or after dismissal as a prevailing party under FRCP 54 and 35 USC § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). This court rejected that request.

AceCo now renews its request for an award of attorney fees to defend ASM's infringement claims because ASM has allegedly exhibited a pattern of conduct that it is inequitable and exceptional under 35 USC § 285. That conduct arises from ASM's alleged failure to disclose prior art in the application for the '165 patent, alleged misrepresentation that the applicant was a small entity for the purpose of payment of fees, and repeated and unsubstantiated claims of infringement. ASM responds that AceCo's claims are untimely, procedurally defective, and without any legitimate basis in law or fact.

I.     **Procedural Defects**

ASM complains that it did not have adequate notice of AceCo's claims of inequitable conduct at any time prior to dismissal and, as a result, AceCo could not have prevailed on those claims. This court agrees.

In its Answer filed on October 19, 2005, AceCo pled a defense of inequitable conduct as follows:[1]

> 20.     ASM is barred from obtaining and [*sic*] relief sought in the complaint because the named inventor of the ASM patent, his legal

---

[1] AceCo also pled a Counterclaim that the '165 Patent "is invalid, null, void and/or unenforceable" under 35 USC §§ 102, 103, and/or 112. Although 35 USC § 102 creates a bar based on prior art, none of those sections of the Patent Act relates to inequitable conduct. Furthermore, the Counterclaim did not incorporate any of the prior allegations of inequitable conduct.

representative, or an individual or entity associated with ASM's patent filing and prosecution (together or individually the 'Patentee') engaged in inequitable conduct during the prosecution of the ASM patent in the USPTO, thereby rendering the ASM patent unenforceable.

21.    For example, the Patentee failed to submit at least one prior art reference to the examiner during the prosecution of the '165 Patent in violation of 37 CFR 1.56. The Patentee's failure to disclose information and prior art material to the patentability of the asserted ASM patent was intended to deceive the USPTO.

22.    By way of further example, the Patentee mis-stated and mis-characterized expected results as actual results during the prosecution of the '165 patent and in the issued '165 patent, and these mis-statements and mis-characterizations were intended to deceive the USPTO and the public.

Makman Decl., ¶ 2, Ex. A, pp. 4-5.

These allegations identify none of the purportedly withheld references or other

information.  The defense of inequitable conduct falls within the general terms under FRCP 9(b)

and must be pled with particularity.  "[I]n pleading inequitable conduct, a party cannot merely

rely on vague allegations of fraud and deception but instead, must specify the time, place, and

content of any alleged misrepresentations made to the PTO."  *Sun Microsystems, Inc. v. Dataram

Corp.*, 1997 WL 50272, * 4 (ND Cal Feb. 4, 1997) (citation omitted).  Because AceCo did not

provide allegations specific enough to apprise ASM of the particular misconduct which would

constitute fraud on the patent office, its defense of inequitable conduct could have been stricken

had the case not been dismissed.  *See id* (striking a claim of inequitable conduct for failure to

plead with particularity).

After being advised that ASM would move to strike the inequitable conduct defense for

lack of particularity, AceCo indicated that it would consider the matter.  Makman Decl., ¶ 3.

Although ASM did not file a motion to strike, on November 18, 2005, it issued interrogatories to

AceCo which included a request for AceCo to set forth its contentions of inequitable conduct with particularity.  *Id*, Ex. B (Interrogatory No. 11).  In turn, AceCo issued interrogatories to ASM which included a request for ASM to identify all prior art claimed by any third party to be relevant to the '165 Patent.  Holland Decl., Ex. N (Interrogatory No. 7).  On December 14, 2005, before discovery responses were due, ASM moved for voluntary dismissal.  On December 21, 2005, AceCo objected to ASM's interrogatory on inequitable conduct and provided no substantive response.  *Id*, Ex. C (Response to Interrogatory No. 11).  The December 23, 2005, deadline for amending pleadings passed without AceCo seeking to amend its inequitable conduct contentions.

Given that ASM moved for voluntary dismissal, it is understandable why it elected not file a motion to strike AceCo's inequitable conduct defense.  However, AceCo made no attempt to amend to cure the defects of its inequitable conduct defense or in any other way to raise the facts and law supporting its defense of inequitable conduct until after this case was dismissed. When opposing ASM's motion for voluntary dismissal on December 29, 2005, AceCo requested attorney fees as a condition to dismissal based on any inequitable conduct by ASM, but presented no facts or argument to support that request.  Instead AceCo argued only that the covenant not to sue would be ineffective due to confusion over the proper parties and that it had a reasonable apprehension of future litigation.

AceCo explains this failure based on its lack of a complete understanding of the relationship between ASM and "Epsilon" to whom the '165 Patent was assigned.  As a result, it claims that it was reluctant to provide any facts attributing inequitable conduct to ASM until that relationship was clarified.

AceCo first sought information concerning the relationship between ASM and "Epsilon" by letter dated October 25, 2004, in response to ASM's demand to cease and desist, but received no response.  Holland Decl., Ex. R.  It again sought that information in its discovery requests to ASM.  Because ASM moved for voluntary dismissal instead of responding to the discovery requests, AceCo requested documents filed by Epsilon Limited Partnership ("ELP") and Epsilon Technology, Inc. from the Arizona Secretary of State.  *Id*, ¶¶ 2 & 3, Exs. A & B.  On January 24, 2006, it also obtained a copy of the Form 20-F filed with the Securities and Exchange Commission by ASM International N.V. for the year ending December 31, 1985.  *Id*, ¶ 4, Ex. C.  Based on these documents, AceCo concluded that Epsilon Technology, Inc. was owned by ASM and that ASM, as general partner of ELP, had exclusive management and control of all aspects of the business of ELP.  At least 20 patents granted to either ELP or Epsilon Technology, Inc. were subsequently assigned to ASM.  *Id*, ¶¶ 5 & 6, Exs. D & E.  These facts led AceCo to conclude that Epsilon Technology, Inc. improperly claimed the right to the benefit of paying small entity filing and issue fees.

Waiting to confirm the relationship between ASM and Epsilon may adequately explain why AceCo delayed pursuing any claim of inequitable conduct based on allegedly false statements made in connection with the claim of small entity status.  However, it fails to explain why AceCo waited to pursue its claim that ASM failed to disclose prior material art to the USPTO or engaged in misconduct during this litigation.  AceCo alleged in paragraphs 21 and 22 of its Answer that the "patentee failed to submit at least one prior art reference to the examiner during the prosecution of the '165 patent" and "mis-stated and mis-characterized expected results as actual results during the prosecution of the '165 patent."  Therefore, when filing its

Answer in October 2005, AceCo already had a good faith belief that ASM (whether alone or through the Epsilon entities) had engaged in inequitable conduct due to nondisclosure, rendering the '165 patent unenforceable.  Furthermore, the billing records submitted by AceCo show that its counsel was studying and well aware of the issue concerning prior art references in early December 2005 before it opposed ASM's motion to dismiss.

At the very least, AceCo could have given notice to ASM and the court before this case was dismissed that it intended to pursue its inequitable conduct defense and, if necessary, could have requested more time to obtain discovery supporting that defense and to file a motion to amend.  Instead, it chose not to provide any suggestion or information as to any alleged inequitable conduct by ASM, either through its discovery responses or its opposition to ASM's motion to dismiss.  As a result, ASM and the court were entirely unaware of any factual or legal basis for AceCo's defense of inequitable conduct prior to dismissal.

Although the dismissal rendered AceCo the prevailing party on ASM's claims, it did not necessarily render AceCo the prevailing party on its inequitable conduct defense.  Because AceCo's defense of inequitable conduct was defective for lack of specificity, it would have been stricken but for the dismissal of the case.  To prevail on this defense, AceCo was procedurally required to first amend its Answer.  At this point a final Judgment has been entered.  After a final judgment has been entered, a motion to amend a pleading "may be considered only if the judgment is first reopened under Rule 59 or 60."  *Lindauer v. Rogers*, 91 F3d 1355, 1357 (9th Cir 1996).  A voluntary dismissal is sufficiently similar to a judgment on the merits that FRCP 60 applies.  *In re Hunter*, 66 F3d 1002, 1004 (9th Cir 1995).  Thus, absent a motion under FRCP 59 or 60, AceCo cannot present an inequitable conduct defense as support for finding an

"exceptional" case and awarding attorney fees.  That defense is untimely and procedurally defective.

However, even if this court allowed this case to be reopened under FRCP 59 or 60 to pursue an inequitable conduct defense, AceCo cannot prevail on the merits of that defense.

## II.    Merits

### A.    Legal Standard

Patent applicants owe a "duty of candor and good faith" to the USPTO.  37 CFR § 1.56(a); *Molins PLC v. Textron, Inc.*, 48 F3d 1172, 1178 (Fed Cir 1995).  A breach of this duty may constitute inequitable conduct.  To determine that a patent is unenforceable based on inequitable conduct involves a two-step analysis.  "First, the trial court must determine whether the withheld information meets a threshold level of materiality.  Second, the district court must then also determine whether the evidence shows a threshold level of intent to mislead the PTO." *Brasseler USA I, L.P., v. Stryker Sales Corp.*, 267 F3d 1370, 1379 (Fed Cir 2001).  Materiality and intent are factual issues which must be established by clear and convincing evidence. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc*, 162 F3d 1113, 1122 (Fed Cir 1998); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F2d 867, 872 (Fed Cir 1988), *cert denied*, 490 US 1067 (1989).  Once the threshold levels of materiality and intent are met, the court then weighs the evidence "to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Molins*, 48 F3d at 1178.  "The more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and *vice versa*." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F3d 1253, 1256 (Fed Cir 1997), *cert denied*, 523 US 1071 (1998).

**B.**    <u>Small Entity Status</u>

AceCo contends that Epsilon Technology Inc.'s representation to the USPTO that it was a small entity for the purpose of payment of fees was a material misrepresentation made in connection with the prosecution of the '165 Patent.  The USPTO rules expressly provide that "[a]ny attempt to fraudulently establish status as a small entity, or pay fees as a small entity" or "[i]mproperly, and with intent to deceive, establishing status as a small entity, or paying fees as a small entity" are considered to be fraud practiced or attempted on the USPTO.  37 CFR § 1.27(h)(1).  Falsely claiming small entity status in connection with the payment of reduced maintenance fees may render a patent unenforceable for inequitable conduct.  *Ulead Systems, Inc. v. Lex Computer & Mgmt. Corp.*, 351 F3d 1139 (Fed Cir 2003) (factual issues precluded summary judgment for importer as to patent's enforceability based on patentee improperly asserting small entity status).

Epsilon Technology, Inc., made a representation in September 1985 in connection with U.S. Patent Application No. 784,738 that it qualified as a small business concern for the purpose of paying reduced fees under 35 USC § 41(a) and (b) and 37 CFR § 1.9(d) because its number of employees, including those of its affiliates, did not exceed 500 persons.  Holland Decl., Ex. F. The File Wrapper Continuation Application filed in January 1988 represented that the small entity status claimed in U.S. Patent Application No. 784,738 "is still proper and its benefit under 37 CFR 1.28(a) is hereby claimed."  *Id*, Ex. G, p. 5.  At that time, ELP, as the assignee, paid a fee based on small entity status.  *Id*, Ex. H.

Based on the documents submitted by AceCo, ASM International, N.V., is the parent of ASM, which in turn was the general partner of ELP.  Holland Decl., Ex. A & C, p. 38, Note G.

As a result, ASM "had exclusive management and control of all aspects of business of ELP." *Id*,

Ex. C., p. 38, Note G.  In addition, ASM "was granted an option by ELP to acquire a non-

exclusive, worldwide right and license" to evaluate and use the technology developed by ELP

and "an option to purchase ELP's right, title and interest" in that technology.  *Id*.  All patents

obtained either in the name of ELP or Epsilon Technology, Inc. were assigned to ASM.  *Id*,

Ex. D.  Thus, AceCo concludes that the applications were being prosecuted for the ultimate

benefit of ASM.

AceCo has submitted no evidence that it, Epsilon Technology, Inc., and/or ELP had more

than 500 employees in 1985 or 1988.  Instead, AceCo relies on the fact that in 1985 ASM

International, N.V., employed a total of 1,974 persons in at least five countries, well over the

defined limits for a small entity.  *Id*, Ex. C, p. 12; 13 CFR §§ 121.801-05.  However, AceCo has

submitted no evidence that ASM International, N.V., had sufficient control over either ASM,

Epsilon Technology, Inc., or ELP to violate the small business entity rule.  All the record reveals

is that ASM: (1) was owned by ASM International, N.V.; (2) owned Epsilon Technology, Inc.;

and (3) was the general partner of ELP.  Whether ASM International, N.V., would qualify as an

affiliate of Epsilon Technology, Inc. in 1985 or of ELP in 1988 based solely on its ownership of

ASM cannot be ascertained from the current record.

Furthermore, ELP assigned the '165 Patent to ASM in January 1993.  Holland Decl.,

Ex. E, p. 3.  After that date, all of the fourth, eighth, and twelfth year maintenance fees for the

'165 Patent were paid by ASM as a "large" entity.  Makman Decl, Ex. F.  If AceCo infringed the

'165 Patent, it did so during the time when ASM had paid the full fees as a large entity.  This

substantially reduces the materiality of any misrepresentations made in 1985 and 1988.

Even if a threshold level of materiality is established, proof of the element of intent is lacking.  AceCo has provided no evidence that either prosecution counsel or the named inventors of the '165 Patent had anything other than a good faith belief that Epsilon Technology, Inc., and ELP qualified for small entity status.

Furthermore, a mistake in claiming small business entity status is generally not a proper basis for finding inequitable conduct.  As explained by another court, the materiality of small business entity status is sufficiently low to require a particularly high showing of intent to mislead the USPTO:

> The level of materiality here is low. The false small entity verifications forms, although material, were collateral to the processing of the claimed invention itself. . . [T]he fact that the false statements are independent of the claims affects the level of materiality.  By way of example, a false statement about small entity status is obviously less material than a false statement about relevant prior art, in large part because the latter statement goes directly to the substance of the claims themselves. . . [T]his comes about because false statements about claims are much more material than ones that *are* independent of the patent claims, thereby requiring a lower level of intent, which is the more difficult element of inequitable conduct to prove.

*Lemelson Med., Educ. & Research Found. L.P., v. Intel Corp.*, 64 USPQ2d 1172, 1181 (D Ariz 2002) (citations omitted) (emphasis in original).

Accordingly, that court concluded that "holding the patents to be unenforceable as a remedy for such behavior strikes the court as totally disproportionate to the wrong done. As another court observed, it is a rather 'draconian proposition' to 'irretrievably extinguish an inventor's patent rights' based on an error in payment of small entity fees."  *Id* (citation omitted). It is similarly too draconian in this case to award AceCo attorney fees based on errors in payment of small entity fees in 1985 and 1988.

C.    **Knowledge of Prior Art**

AceCo contends that the named inventors of the '165 Patent failed to cite certain prior art to the USPTO.  Pursuant to 35 USC § 102(b), a patent is not enforceable if it "was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." This statute "may create a bar to patentability either alone . . .or in conjunction with 35 USC § 103 (1988), if the claimed invention would have been obvious . . . in conjunction with the prior art." *LaBounty Mfg., Inc., v. United States Int'l Trade Comm'n,* 958 F2d 1066, 1071 (Fed Cir 1992).

It is far from clear and convincing that the references cited by AceCo are material to the patentability of the showerheads.  One reference that was allegedly withheld is U.S. Patent No. 3,916,822, issued in 1975 to McDonald Robinson, one of the named inventors of the '165 Patent. Holland Decl., ¶ 13 & Ex. I.  Although the '822 Robinson Patent was not disclosed to the USPTO, it is actually cited on the face of the '165 Patent.  This means that the examiner considered the '882 Robinson Patent and agreed that the later invention was patentable over Robinson.  Therefore, even if the inventors should have submitted this patent to the USPTO before the USPTO found it, the USPTO considered and rejected it.  As a result, the patent could not have been material.

The other references allegedly withheld from the USPTO are various scientific articles which reveal the concept of a chemical vapor deposition process employing a stagnation point flow geometry having an axially symmetric flow.  Although this court does not purport to be an expert in this area, its reading of these articles reveals that they describe a process.  The '165

Patent describes not only a process, but claims a specific structure for controlling gas flow, namely a showerhead meeting specific limitations.  None of the articles discusses or describes the structure of any showerhead, but instead concerns theoretical mathematical and computer simulations.

Two of these articles were published in February 1984 as part of the "Proceedings of the Ninth International Conference on Chemical Vapor Deposition 1984," of which Robinson was one of the editors.  One of the articles, titled "Modeling of Chemical Vapor Deposition Reactors," was written by Klavs F. Jensen, a co-inventor of the '165 Patent.  Holland Decl., Ex. J.  It specifically states in the opening paragraph that it is about "mathematical models" and not existing products.  *Id*, p. 5.  Similarly, an article by G. Wahl titled "Theoretical Description of CVD Processes" describes a theoretical method of computer simulation and not existing products.  *Id*, Ex. K, p. 5.  In addition, Wahl's earlier 1977 article is titled "Hydrodynamic Description of CVD Process."  *Id*, Ex. L, p. 3.  The drawing referred to by AceCo from this 1977 article is from a section titled "Theoretical Results and Visualization Experiments."  It does not represent an actual existing device, but rather a theoretical model for gas flow.

In contrast, the '165 Patent teaches how to create the desired gas flow with a specific structure or apparatus, not how to simulate it.  *See ASM Am., Inc. v. Genus, Inc.*, 260 F Supp2d 827, 860-63 (ND Cal 2002) (finding that Claims 6 and 9 are not invalid as indefinite because they contain enough structure to perform the recited functions).  Absent expert testimony to the contrary, this court finds no substantial likelihood that a reasonable examiner would have considered the omitted references material in deciding whether to allow the application to issue as a patent.

Even if these articles were material, the evidence is not clear and convincing that the named inventors deliberately withheld them from the USPTO with the intent to deceive. Due to the lack of discovery, the record contains no testimony by the inventors. Instead, AceCo argues that a deceptive intent should be inferred because the named inventors knew of the prior art references years before they filed their patent application.

However, "materiality does not presume intent, which is a separate and essential component of inequitable conduct." *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F2d 544, 552 (Fed Cir 1990). "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Hebert v. Lisle Corp.,* 99 F3d 1109, 1116 (Fed Cir 1996). As a result, "a failure to disclose a prior art device to the PTO, where the only evidence of intent is a lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable intent." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 2006 WL 454355, *5 (Fed Cir Feb. 27, 2006).

AceCo relies on *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.,* 394 F3d 1348, 1354 (Fed Cir 2005), which held that a lack of a good faith explanation of a nondisclosure can be evidence of intent to deceive. However, *Bruno* involved circumstances beyond the lack of a good faith explanation from which one could infer intent. In that case, an official of Bruno disclosed material prior art to the FDA while simultaneously withholding it from the USPTO. Disclosing the prior art to one agency and not the other, without offering a good faith explanation for not disclosing the prior art to the USPTO, constitutes substantial evidence of deceptive intent. Here, in contrast, there is no evidence beyond the lack of a good faith

explanation for the nondisclosure.  There was no deliberate choice to disclose the information to

one agency but not to the other, and the inventor(s) have not had an opportunity to provide a

good faith explanation.

There is no strict liability for nondisclosure.  Even evidence of gross negligence in

nondisclosure would not necessarily constitute inequitable conduct.  *Kingsdown,* 863 F2d at 867.

Given the dearth of evidence as to the element of intent in light of the clear and convincing

evidentiary standard, there is no basis to find that ASM engaged in inequitable conduct based on

nondisclosure of prior art.

### D.    Other Inequitable Conduct

AceCo also claims that this case is "exceptional" due to the misconduct by ASM during

litigation.  As in its opposition to dismissal, AceCo once again questions ASM's motivation and

timing for seeking dismissal on the eve of having to respond to discovery requests.  AceCo

contends, but without any factual basis, that ASM could have discovered  that AceCo had not

qualified its showerhead perhaps as early as October 2004 and certainly before filing this action.

This court previously rejected that argument and finds no basis to reconsider that decision.

The only new information submitted by AceCo is that ASM has asserted claims for

infringement of the '165 Patent on at least four prior occasions (including once as a

counterclaim) and dismissed two of those claims.  Holland Decl., ¶¶ 26-29, Exs. P & Q.  In

addition, a court in 2002 found Claims 5, 7, and 11 in the '165 Patent invalid as indefinite.  *ASM*

*Am., Inc. v. Genus, Inc.*, *supra.*  However, four prior assertions of infringement with two

dismissals do not inevitably lead to the conclusion that the filing of this action was manipulative

or vexatious.  It is unknown why ASM dismissed two of its prior infringement suits.  They could

very well have been settled on terms favorable to ASM. And although some claims of the '165 Patent were declared invalid in 2002, there is no evidence that the remaining claims were invalid, such that filing subsequent suits for infringement was frivolous. More evidence than this is required to conclude that ASM has forced AceCo to respond to vexatious litigation.

<u>**ORDER**</u>

For the reasons stated above, defendants/counterclaimant's Motion for Fees and Costs (docket # 37) and Bill of Costs (docket # 44) are DENIED

DATED this 7th day of March, 2006.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

16 - OPINION AND ORDER